Present: Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and Agee, JJ., and Stephenson, S.J.

MICHAEL RICARDO MAGRUDER

v.  Record No. 070762

COMMONWEALTH OF VIRGINIA

SHELDON A. CYPRESS

v.  Record No. 070815

COMMONWEALTH OF VIRGINIA

MARK A. BRISCOE

v.  Record No. 070817

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE CYNTHIA D. KINSER
February 29, 2008

FROM THE COURT OF APPEALS OF VIRGINIA

In each of these appeals, the defendant claims that the admission into evidence, pursuant to Code § 19.2-187, of a certificate of analysis in the absence of testimony at trial from the person who performed the particular analysis and prepared the certificate violated his rights under the Confrontation Clause of the Sixth Amendment.  Because the procedure provided in Code § 19.2-187.1 adequately protects a criminal defendant's rights under the Confrontation Clause and because the defendants in these appeals failed to utilize that procedure, we conclude that they waived the challenges under the Confrontation Clause to the admissibility of the certificates of analysis.  We will

therefore affirm the judgments of the Court of Appeals upholding the various convictions at issue.

## I. RELEVANT FACTS AND PROCEEDINGS

Although these appeals involve a common dispositive question of law, which we review de novo, Torloni v. Commonwealth, 274 Va. 261, 267, 645 S.E.2d 487, 490 (2007), their facts and procedural histories differ. Therefore, we will first summarize the relevant facts of each case and then analyze the dispositive issue that the appeals share. The appeal by Mark A. Briscoe involves one additional issue that we will address separately following the analysis of the dispositive issue.

## A. Magruder v. Commonwealth

During a consensual search of Michael Ricardo Magruder, Officer William Catlett of the City of Winchester Police Department discovered an "off-white rock-like substance" in the right front pocket of Magruder's pants. Catlett suspected the substance was crack cocaine. Catlett took possession of the "rock" and submitted it to a forensic laboratory for testing. A forensic analyst with the Department of Criminal Justice Services, Division of Forensic Science, tested the substance and reported in a certificate of analysis that it was "0.022 gram[s]" of cocaine. In the certificate, the analyst also attested

2

that he had performed the analysis and that the certificate was "an accurate record of the results of that analysis."

Magruder was subsequently indicted in the Circuit Court of the City of Winchester for possession of cocaine, in violation of Code § 18.2-250(A).  At a bench trial, the Commonwealth offered into evidence the certificate of analysis.  Relying on the decision in Crawford v. Washington, 541 U.S. 36 (2004), Magruder objected, asserting that the admission of the certificate of analysis would violate his Sixth Amendment right to confront the witness against him.  The circuit court overruled Magruder's objection, stating: "Crawford only applies to testimonial evidence.  You have a right to call [the forensic analyst] if you want to."  Magruder did not call the forensic analyst to testify and presented no evidence refuting the accuracy of the analysis of the substance seized from him, as reported in the certificate of analysis.  The circuit court convicted Magruder of possession of cocaine and sentenced him to a suspended term of one year and six months of incarceration, with two years of supervised probation.

The Court of Appeals affirmed Magruder's conviction in an unpublished opinion.  Magruder v. Commonwealth, Record No. 1982-05-4 (March 13, 2007).  Relying on its decision in

Brooks v. Commonwealth, 49 Va. App. 155, 638 S.E.2d 131 (2006), the Court of Appeals held that the procedures set forth in Code §§ 19.2-187 and 19.2-187.1 adequately protected Magruder's Confrontation Clause rights and that Magruder's failure to notify the Commonwealth of his desire to cross-examine the forensic analyst at trial waived his right to do so. Magruder, slip op. at 1. Thus, the Court of Appeals concluded that the circuit court did not err in admitting the certificate of analysis in the absence of testimony from the person who performed the analysis. Id.

On appeal to this Court, Magruder presents two assignments of error:

    I.    The Court of Appeals erred in concluding that . . . Code § 19.2-187.1 sets out a reasonable procedure to be followed in order for a defendant to exercise his right to confront a particular limited class of scientific witnesses at trial.

    II.    The Court of Appeals erred in concluding that a defendant's failure to timely notify the Commonwealth of his desire to confront the forensic analyst at trial constitutes a waiver of that right.

### B. Cypress v. Commonwealth

Sheldon A. Cypress was a passenger in an automobile being driven by his cousin when a trooper with the Virginia State Police stopped the vehicle because of its improperly tinted windows. The driver consented to a search of the

4

vehicle. During that search, the trooper found, among other things, two plastic bags – one under the driver's seat and one under the passenger's seat – each containing a "chunky white substance" that the trooper suspected was crack cocaine. Subsequent forensic testing at the Department of Forensic Science revealed that the substance was cocaine, totaling 60.5 grams. A certificate of analysis reporting those results bore the signature of the forensic analyst who conducted the testing and included an attestation that she had performed the analysis.

Cypress was indicted in the Circuit Court of the City of Chesapeake for possession of cocaine with the intent to distribute, having previously committed the offense of distribution or possession with the intent to distribute, in violation of Code § 18.2-248(C). At a bench trial, the Commonwealth moved to admit the certificate of analysis into evidence. Cypress objected, arguing that under the holding in Crawford the certificate fell into a core class of testimonial evidence and was therefore inadmissible in the absence of testimony from the person who performed the analysis of the seized substance. The circuit court overruled the objection, holding that "the scientific results stated in the certificate of analysis are not

testimonial statements as that term is defined or described in Crawford v. Washington."[1]

Cypress did not call the forensic analyst as a witness and presented no evidence. The circuit court convicted Cypress of possession of cocaine with the intent to distribute, second or subsequent offense, and sentenced him to imprisonment for 15 years, with 10 years suspended, and a fine of $1,000.[2]

The Court of Appeals denied Cypress' appeal in an unpublished per curiam order. Cypress v. Commonwealth, Record No. 1547-06-1 (January 3, 2007). Citing its decision in Brooks, the Court of Appeals stated: "assuming a certificate of analysis constitutes testimonial evidence under Crawford, a defendant's confrontation rights are nonetheless protected by the procedures provided by Code §§ 19.2-187 and 19.2-187.1." Id., slip op. at 2. The Court of Appeals, however, held that Cypress waived his right to confront the forensic analyst who prepared the

_____

[1] Cypress renewed his Confrontation Clause challenge to the admissibility of the certificate of analysis again in motions to strike the Commonwealth's evidence, in a post-trial motion, and at sentencing. The circuit court denied the renewed motions for the reasons originally stated.

[2] There appears to be a discrepancy between the conviction order of April 19, 2006 and the sentencing order of June 26, 2006. The conviction order states that Cypress was convicted of distributing cocaine, a second or

6

certificate of analysis because he did not utilize the procedure set forth in Code § 19.2-187.1.  Id.  For the reasons stated in the January 3, 2007 order, a three-judge panel of the Court of Appeals also denied the petition for appeal.  Cypress v. Commonwealth, Record No. 1547-06-1 (March 23, 2007).

Now on appeal to this Court, Cypress raises two assignments of error:

I.    The trial court erred by allowing into evidence the certificate of analysis over Defendant's objection that its introduction violated his Sixth Amendment Confrontation Clause rights as articulated in Crawford v. Washington and its progeny; the trial court erred by finding Cypress guilty of possession with intent to distribute cocaine where the only evidence that he possessed cocaine came from this drug certificate which should have been excluded from evidence[.]

II.   The Court of Appeals erred by ruling that Defendant waived his Confrontation Clause rights by declining to subpoena the chemist who prepared the certificate and this ruling impermissibly, and unconstitutionally, required Defendant to take affirmative steps to safeguard his Confrontation Clause rights[.]

## C. Briscoe v. Commonwealth

Police officers with the City of Alexandria Police Department executed a search warrant for the apartment of

---

subsequent offense.  The sentencing order, however, states that he was convicted of distributing cocaine.

7

Mark A. Briscoe.  During the search, the officers seized suspected cocaine scattered about in the apartment's kitchen area, as well as two scales, a razor blade, a 100-gram weight, a box of plastic sandwich bags, and a plate. Many of these items appeared to have deposits of drug residue on them.  In a search of Briscoe's person, the police seized a white, rock-like substance wrapped in plastic from the pocket of his shorts.

The police submitted the items of suspected cocaine to the Department of Criminal Justice Services, Division of Forensic Science, for testing.  In two certificates of analysis, a forensic analyst reported that the confiscated substances were "solid material" cocaine totaling 36.578 grams.  The certificates also contained the analyst's signature and attestation that she performed the analyses and that the certificates accurately reflected the results of those analyses.

Briscoe was indicted in the Circuit Court of the City of Alexandria for possession with the intent to distribute cocaine, in violation of Code § 18.2-248(C), unlawful transportation of cocaine into the Commonwealth with the intent to distribute, in violation of Code § 18.2-248.01, and conspiracy to distribute cocaine, in violation of Code §§ 18.2-248 and 18.2-256.  During a bench trial, the

8

Commonwealth sought to admit into evidence the two certificates of analysis. Briscoe objected, arguing that their admission, without the forensic analyst present to testify, violated his confrontation rights under the Sixth Amendment. Relying on the decision in Crawford, Briscoe asserted that the certificates were testimonial because they contained solemn declarations or affirmations that the Commonwealth sought to use in order to establish an element of the charged offenses. Briscoe also claimed that the procedure provided in Code § 19.2-187.1 permitting a defendant to call a forensic analyst as an adverse witness does not protect his confrontation rights and actually imposes an unconstitutional affirmative step that he must take in order to assert his Sixth Amendment right of confrontation.

The circuit court overruled Briscoe's objection, holding that the procedure in Code § 19.2-187.1 preserved his right to cross-examine the forensic analyst. In response to the circuit court's ruling, Briscoe further argued that the statutory right to call the forensic analyst as an adverse witness does not satisfy his constitutional right to confront the Commonwealth's witness and also impermissibly shifts the burden to produce

evidence to a criminal defendant. The circuit court did not change its ruling.

Briscoe did not call the forensic analyst to testify and presented no evidence. The circuit court convicted Briscoe of possession with the intent to distribute cocaine and transportation of cocaine into the Commonwealth with the intent to distribute. The court sentenced Briscoe to a total of 20 years of incarceration, with all but 5 years and 8 months suspended.

The Court of Appeals denied Briscoe's appeal in an unpublished per curiam order. Briscoe v. Commonwealth, Record No. 1478-06-4 (January 18, 2007). Assuming, without deciding, that the certificates of analysis constituted "testimonial" evidence under Crawford, the Court of Appeals held that Briscoe's right to confront the forensic analyst was protected by the procedure provided in Code § 19.2-187.1. Id., slip op. at 2 (citing Brooks, 49 Va. App. at 161, 638 S.E.2d at 134). The court further held that, by failing to follow that statutory procedure, Briscoe waived his constitutional right to confront the forensic analyst who prepared the certificates. Id. Briscoe sought review of the Court of Appeals per curiam order, and a three-judge panel denied that petition for appeal for the reasons

stated in the January 18, 2007 order.  Briscoe v.

Commonwealth, Record No. 1478-06-4 (March 26, 2007).

On appeal to this Court, Briscoe raises this

assignment of error with regard to the certificates of

analysis:[3]

> I.   The Court of Appeals erred in upholding the
>      trial court's finding that Defendant's
>      constitutional right to confront and cross-
>      examine adverse witnesses was not violated
>      by the admission of the certificates of drug
>      analysis into evidence.

II. ANALYSIS

A. Confrontation Clause

The dispositive issue before us is whether the

procedure set forth in Code § 19.2-187.1 adequately

protects a criminal defendant's rights under the

Confrontation Clause of the Sixth Amendment, and if so,

whether Magruder, Cypress, and Briscoe (collectively, the

defendants) waived their Confrontation Clause challenges to

the admissibility of the respective certificates of

analysis by failing to utilize that procedure.  Before

resolving that issue, we first turn to the decision of the

Supreme Court of the United States in Crawford v.

Washington, since the defendants relied on it in claiming

---

[3] Briscoe presents an additional, unrelated assignment of error that the Court will address in a separate section of this opinion.

11

that admission into evidence of the certificates of analysis violated their confrontation rights.  Prior to that decision, the Confrontation Clause had not been construed to bar the admission of an unavailable witness' hearsay statement against a criminal defendant if the statement bore sufficient "indicia of reliability" either by falling within a "firmly rooted hearsay exception" or by "a showing of particularized guarantees of trustworthiness."  Ohio v. Roberts, 448 U.S. 56, 66 (1980).  In Crawford, the Supreme Court rejected the Roberts analysis and held that "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability [of the witness] and a prior opportunity for cross-examination."  541 U.S. at 68; accord Hodges v. Commonwealth, 272 Va. 418, 428-29, 634 S.E.2d 680, 685 (2006).

Now, under Crawford, the question whether admission of a hearsay statement against a criminal defendant violates the Confrontation Clause turns on whether the statement is "testimonial" in nature.  See Anderson v. Commonwealth, 274 Va. 469, 478, 650 S.E.2d 702, 707 (2007) (in Confrontation Clause challenges since Crawford, the inquiry has been whether a hearsay statement is testimonial); Riner v. Commonwealth, 268 Va. 296, 322, 601 S.E.2d 555, 570 (2004)

12

(to decide whether admission of a hearsay statement violates the Confrontation Clause, the Supreme Court distinguished between "testimonial" and "non-testimonial" hearsay). The Supreme Court declined to provide a comprehensive definition of the term "testimonial" in Crawford, but it did state that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." 541 U.S. at 68; see also Davis v. Washington, 547 U.S. 813, ____ (2006) (holding that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency [but] [t]hey are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution").

In these appeals, it is not necessary to decide whether a certificate of analysis is "testimonial." Even if we assume the certificates in the cases at bar are testimonial, the decision in Crawford did not address the issues before us, i.e., whether a prescribed statutory

demand procedure adequately protects a criminal defendant's rights under the Confrontation Clause and whether failure to follow that procedure waives the right to confront a particular witness.  See Brown v. State, 939 So.2d 957, 960 (Ala. Crim. App. 2005) ("Crawford speaks to the issue of the meaning and scope of the Confrontation Clause; it does not, however, speak to the issues of preservation and waiver of a criminal defendant's confrontation right."); Hinojos-Mendoza v. People, 169 P.3d 662, 668 (Colo. 2007) ("Crawford did not alter the fact that the right to confrontation can be waived.").

We now begin our analysis by examining the two relevant statutes, Code §§ 19.2-187 and 19.2-187.1.  The first statute permits a certificate of analysis, when "duly attested" by the "person performing an analysis or examination" in certain laboratories, to be admitted into evidence "[i]n any hearing or trial of any criminal offense . . . as evidence of the facts therein stated and the results of the analysis or examination referred to therein."  Code § 19.2-187.  The only proviso is the requirement that the certificate of analysis be "filed with the clerk of the court hearing the case at least seven days prior to the hearing or trial."  Id.  The second statute, Code § 19.2-187.1, establishes a procedure that presents an

accused with the opportunity to question the person performing the analysis or examination as an adverse witness.  That statute states:

> The accused in any hearing or trial in which a certificate of analysis is admitted into evidence pursuant to § 19.2-187 or § 19.2-187.01 shall have the right to call the person performing such analysis or examination or involved in the chain of custody as a witness therein, and examine him in the same manner as if he had been called as an adverse witness.  Such witness shall be summoned and appear at the cost of the Commonwealth.

Code § 19.2-187.1.

In each of the cases before us, the Court of Appeals relied on its decision in Brooks to hold that the defendants waived their right to confront the forensic analysts who prepared the certificates of analysis admitted into evidence at their respective trials because they failed to utilize the statutory procedure available to them.  In Brooks, the accused objected to the introduction of certificates of analysis into evidence on the basis that "the Commonwealth's failure to call the forensic scientist who tested the substances denied him his constitutional right to confrontation under Crawford."  49 Va. App. at 158, 638 S.E.2d at 133.  The Court of Appeals rejected that argument, holding that "Code § 19.2-187.1 sets out a reasonable procedure to be followed in order for a

15

defendant to exercise his right to confront a particular limited class of scientific witnesses at trial and that a defendant's failure to follow this procedure amounts to a waiver of the constitutional right to confront such witnesses." Id. at 164-65, 638 S.E.2d at 136.

Noting that an accused can voluntarily waive the right of confrontation and that reasonable requirements may be attached to the assertion of federal constitutional rights, the Court of Appeals reasoned that, in light of the decision in Crawford, "Code §§ 19.2-187 and 19.2-187.1[] are merely a request to the defendant to stipulate to the admissibility of the contents of any properly filed certificates of analysis" and that when an accused "waits until trial to assert his right to cross-examine the analyst who prepared a particular certificate, he accepts the request to stipulate and waives his right to confront that witness." Id. at 167, 638 S.E.2d at 137; see also State v. Cunningham, 903 So.2d 1110, 1119 (La. 2005) (holding such statutes "are a formalized means of effectuating a stipulation to the admissibility of matters which often are not in dispute"). Continuing, the Court of Appeals explained that, if an accused does not wish to accept the requested stipulation, "Code § 19.2-187.1 provides the mechanism by which he may reject the request

16

and have the analyst summoned to appear at trial at the cost of the Commonwealth in order to be subject to cross-examination." Brooks, 49 Va. App. at 167-68, 638 S.E.2d at 138.

Finally, the Court of Appeals held that the argument claiming the procedure in Code § 19.2-187.1 unconstitutionally places the burden on an accused to present evidence in order to exercise his confrontation rights was not before it because the defendant did not summon the forensic analyst or ask the Commonwealth to do so. Id. at 168, 638 S.E.2d at 138. Thus, according to the Court of Appeals, the trial court never had the occasion to rule on any challenge regarding the order of proof. Id.

The defendants here assert that Brooks was wrongly decided and argue that they did not waive their Sixth Amendment right to confront the forensic analysts by failing to call those persons as adverse witnesses under the provisions of Code § 19.2-187.1. According to the defendants, the procedure provided in Code § 19.2-187.1 does not adequately protect the Sixth Amendment right of confrontation for several reasons: (1) the statute requires an accused to take impermissible affirmative steps to secure the right to confront the forensic analyst; (2) the statute does not provide any notice that failure to utilize

17

its provisions will automatically waive the right to confront the forensic analyst; (3) the statute does not insure that a waiver of the Sixth Amendment right to confront the forensic analyst is knowing, voluntary, and intelligent; (4) the statute by its terms addresses the order of proof and impermissibly requires an accused to present evidence in order to preserve confrontation rights; and (5) the statute allows an accused to cross-examine the forensic analyst only after a certificate of analysis has already been admitted into evidence.[4]

The Confrontation Clause of the Sixth Amendment to the Constitution of the United States provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This guarantee is enforced against the states through the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 401 (1965). The Confrontation Clause

---

[4] Additionally, Magruder claims that the Court of Appeals re-wrote Code § 19.2-187.1 because its provisions do not mention a stipulation or require notice by an accused to the Commonwealth or trial court that he wishes to have the forensic analyst present at trial.

Cypress also asserts that the Court of Appeals erred by addressing the waiver issue sua sponte. That alleged error is not, however, the subject of an assignment of error. See Rule 5:17(c).

secures the "literal right to 'confront' the witness at the time of trial." California v. Green, 399 U.S. 149, 157 (1970). "The substance of the constitutional protection is . . . seeing the witness face to face, and . . . subjecting him to the ordeal of a cross-examination." Mattox v. United States, 156 U.S. 237, 244 (1895); see also United States v. Owens, 484 U.S. 554, 559 (1988) ("[t]he Confrontation Clause guarantees only 'an opportunity for effective cross-examination'") (quoting Kentucky v. Stincer, 482 U.S. 730, 739 (1987) (emphasis in original)); James v. Commonwealth, 254 Va. 95, 98, 487 S.E.2d 205, 207 (1997) ("The Confrontation Clause . . . grants a criminal defendant the right to cross-examine witnesses called by the prosecution.").

The right to confront "(1) insures that the witness will give his statements under oath . . . ; (2) forces the witness to submit to cross-examination . . . ; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement." Green, 399 U.S. at 158. "The combined effect of these elements of confrontation – physical presence, oath, cross-examination, and observation of demeanor by the trier of fact – serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an

accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings."  Maryland v. Craig, 497 U.S. 836, 846 (1990); see also Crawford, 541 U.S. at 61 (the "ultimate goal" of the Confrontation Clause "is to ensure reliability of evidence . . . by testing in the crucible of cross-examination").

With this understanding of the Confrontation Clause, the question whether the procedure provided in Code § 19.2-187.1 adequately protects a criminal defendant's right to confront the forensic analyst turns on whether the statute supplies the "elements of confrontation – physical presence, oath, cross-examination, and observation of demeanor by the trier of fact."  Craig, 497 U.S. at 846. We conclude that it does.  Pursuant to Code § 19.2-187.1, the defendants could have insured the physical presence of the forensic analysts at trial by issuing summons for their appearance at the Commonwealth's cost, or asking the trial court or Commonwealth to do so.  At trial, the defendants could have called the forensic analysts as witnesses, placed them under oath, and questioned them as adverse witnesses, meaning the defendants could have cross-examined them.  See Teleguz v. Commonwealth, 273 Va. 458, 479, 643 S.E.2d 708, 721-22 (2007) (noting that a witness called as

an adverse witness can be subjected to cross-examination);
Smith v. Lohr, 204 Va. 331, 335, 130 S.E.2d 433, 436 (1963)
(same).  The trier of fact would then have had the
opportunity to observe the demeanor of the witnesses.  In
short, if the defendants had utilized the procedure
provided in Code § 19.2-187.1, they would have had the
opportunity to cross-examine the forensic analysts.  See
Owens, 484 U.S. at 559 (the Confrontation Clause guarantees
opportunity for cross-examination).  Contrary to the
defendants' position, the Confrontation Clause does not
insure that opportunity before a certificate of analysis is
admitted into evidence.  See Crawford, 541 U.S. at 59 n.9
(the Confrontation Clause "does not bar admission of a
statement so long as the declarant is present at trial to
defend or explain it").

Nevertheless, the defendants argue that this statutory
procedure impermissibly burdens the exercise of their right
under the Confrontation Clause by requiring them to take
certain affirmative steps in order to assert that right.
While "[m]ost . . . Sixth Amendment rights arise
automatically on the initiation of the adversary process
and no action by the defendant is necessary to make them
active in his or her case," Taylor v. Illinois, 484 U.S.
400, 410 (1988), "the right to confront and to cross-

21

examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."  Chambers v. Mississippi, 410 U.S. 284, 295 (1973); see also Mattox, 156 U.S. at 243 (noting that the right to confront a witness "must occasionally give way to considerations of public policy and the necessities of the case").  For example, "'trial judges retain wide latitude' to limit reasonably a criminal defendant's right to cross-examine a witness 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'"  Michigan v. Lucas, 500 U.S. 145, 149 (1991) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)); see also James, 254 Va. at 98, 487 S.E.2d at 207 ("The Confrontation Clause . . . does not grant a defendant an unlimited right to cross-examination.").  Even after Crawford, the Confrontation Clause does not bar the admission of testimonial hearsay statements if the declarant is unavailable, so long as the accused had a prior opportunity to cross-examine the witness.  541 U.S. at 68.

Moreover, "[a] state procedural rule which forbids the raising of federal questions at late stages in the case, or by any other than a prescribed method, has been recognized

22

as a valid exercise of state power." Williams v. Georgia, 349 U.S. 375, 382-83 (1955). Virginia has adopted several provisions that require criminal defendants to take certain procedural steps in order to exercise or vindicate a myriad of constitutional rights. Pursuant to Code § 19.2-266.2, an accused must file a written motion to suppress evidence allegedly obtained in violation of the Fourth, Fifth, or Sixth Amendments no later that seven days before trial. See also Rule 3A:9. Failure to follow this statutory requirement results in a waiver of an accused's constitutional challenge to the admissibility of the evidence. Schmitt v. Commonwealth, 262 Va. 127, 145-46, 547 S.E.2d 186, 199 (2001). Similarly, the provisions of Code § 18.2-67.7 impose notice-and-hearing requirements in order to introduce evidence concerning a victim's past sexual conduct with a person other than the accused. Such requirements are not unconstitutional but "serve[] legitimate state interests in protecting against surprise, harassment, and undue delay." Lucas, 500 U.S. at 152-53.

An accused must also, upon request of the Commonwealth, disclose whether he intends to introduce evidence to establish an alibi. Rule 3A:11(c)(2). In Williams v. Florida, 399 U.S. 78 (1970), the Supreme Court held that a similar alibi-notice rule did not violate the

23

Fifth Amendment.  Id. at 85.  The Court observed that the rule, "[a]t most, . . . only compelled [the defendant] to accelerate the timing of his disclosure, forcing him to divulge at an earlier date information that the [defendant] from the beginning planned to divulge at trial."  Id.; see also United States v. Sanchez, 361 F.2d 824, 825 (2nd Cir. 1966) (the Sixth Amendment right to a speedy trial attaches upon arrest or the filing of formal charges but failure to demand a speedy trial waives the constitutional right); State v. Jestes, 448 P.2d 917, 920 (Wash. 1968) (same).

"The test is whether the defendant has had 'a reasonable opportunity to have the issue as to the claimed right heard and determined by the state court.'"  Michel v. Louisiana, 350 U.S. 91, 93 (1955) (quoting Parker v. Illinois, 333 U.S. 571, 574 (1948)).  The provisions of Code § 19.2-187.1 pass this test.  We agree with the holding of the Court of Appeals in Brooks: "Code § 19.2-187.1 sets out a reasonable procedure to be followed in order for a defendant to exercise his right to confront a particular limited class of scientific witnesses at trial." 49 Va. App. at 164, 638 S.E.2d at 136.

> Legislatures may pass laws regulating, within reasonable limits, the mode in which rights secured to the subject by bills of right and constitutions shall be enjoyed, and if the

> subject neglects to comply with these regulations he thereby waives his constitutional privileges.

State v. Berg, 21 N.W.2d 777, 780 (Iowa 1946). Furthermore, nothing in the records before us suggest that any defendant was somehow precluded from utilizing the procedure provided in Code § 19.2-187.1 or that the procedure was unduly burdensome.

The defendants do, however, claim that the statutory procedure, by its terms, shifts the burden of producing evidence and requires a criminal defendant to call the forensic analyst in order to exercise his right to confront that witness. This argument is not cognizable under the Confrontation Clause. See Owens, 484 U.S. at 559 ("[T]he Confrontation Clause guarantees only 'an opportunity for effective cross-examination.'") (alterations and emphasis in original). Instead, it raises due process concerns that are not properly before us in these appeals. Because the defendants did not avail themselves of the opportunity to require the presence of a particular forensic analyst at trial, they were never in the position of being forced, over their objection, to call a forensic analyst as a witness. In other words, no defendant said to the respective circuit court, "the forensic analyst is here to testify but the Commonwealth must first call the witness."

Like the situation in Brooks, "the trial court never had occasion to address the proper order of proof."  49 Va. App. at 168, 638 S.E.2d at 138; but see Belvin v. State, 922 So.2d 1046, 1054 (Fla. Dist. Ct. App. 2006) ("[S]tatutory provision, [providing defendant with the opportunity to subpoena breath test operator,] does not adequately preserve the defendant's Sixth Amendment right to confrontation" because it impermissibly shifts the burden to the defendant to produce evidence.); State v. Birchfield, 157 P.3d 216, 220 (Or. 2007) ("[I]t is clear that the transfer of legal responsibility to secure the attendance of the declarant from the state to the defendant cannot withstand constitutional scrutiny.").

Finally, it is undisputed that a criminal defendant can waive the right to confrontation.  See Taylor v. United States, 414 U.S. 17, 19 (1973) (confrontation rights waived by voluntary absence from the trial); Illinois v. Allen, 397 U.S. 337, 342-43 (1970) (loss of confrontation rights through misconduct in the courtroom); Boykin v. Alabama, 395 U.S. 238, 243 (1969) (confrontation rights waived by a guilty plea); Diaz v. United States, 223 U.S. 442, 450-51 (1912) (waiver by consent to admission of absent witness's testimony); United States v. Carlson, 547 F.2d 1346, 1359-60 (8th Cir. 1976) (a defendant's intimidation of a grand

26

jury witness waived confrontation rights).  The decision in Crawford did not alter that fact.  Hinojos-Mendoza, 169 P.3d at 668.  Indeed, a criminal defendant can waive a panoply of constitutional rights.  See Muhammad v. Commonwealth, 269 Va. 451, 507, 619 S.E.2d 16, 48 (2005) (the right to present mitigating testimony "may be as venerated as the right to a jury, the right to counsel, the right against self-incrimination, and the right to exclusion of evidence seized in an unconstitutional manner," all which are "within the panoply of constitutional rights that may be waived by the accused"); Fails v. Virginia State Bar, 265 Va. 3, 8, 574 S.E.2d 530, 533 (2003) (noting that a criminal defendant may waive the right to demand counsel or a jury trial); Commonwealth v. Washington, 263 Va. 298, 304-05, 559 S.E.2d 636, 639 (2002) (double jeopardy rights can be waived expressly or by implication); see also Code § 19.2-266.2 (an accused waives his right to challenge the admission of evidence allegedly obtained in violation of the Fourth, Fifth and Sixth Amendments if he does not file a written motion to suppress at least seven days before trial); Code § 18.2-67.7(B) (rape shield statute imposes notice-and-hearing requirements in order to secure the right to present certain evidence); Rule 3A:11(c)(2) (requiring defendant to

disclose intent to present alibi evidence prior to trial or risk waiving the right to do so).

The defendants, however, contend that any waiver of confrontation rights cannot be presumed from a silent record and that, given the absence of any notice of a waiver in Code § 19.2-187.1, they did not knowingly, intelligently, and voluntarily waive their Sixth Amendment right to confront the forensic analysts.  This Court, however, has never held that the record, in all circumstances, must affirmatively reveal that a criminal defendant personally waived his right to confrontation.  In Bilokur v. Commonwealth, 221 Va. 467, 474, 270 S.E.2d 747, 752 (1980), we concluded that a defendant's "silence was tantamount to assent" that an incriminating extrajudicial statement would be admitted by stipulation.  Id.  We held "that the defendant, acting through counsel, waived his right to invoke the constitutional guarantee of confrontation."  Id.; see also United States v. Stephens, 609 F.2d 230, 232-33 (5th Cir. 1980) (counsel in a criminal case may waive a defendant's right of confrontation by stipulating to the admission of evidence); cf. Washington, 263 Va. at 304-05, 559 S.E.2d at 639 ("defendant implicitly consented to the [trial] court's declaration of a mistrial [and thereby] waived his double jeopardy rights").

We recognize that "[w]aiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege."  Allen v. Commonwealth, 252 Va. 105, 111, 472 S.E.2d 277, 280 (1996).  "What suffices for waiver depends on the nature of the right at issue."  New York v. Hill, 528 U.S. 110, 114 (2000).  As the Supreme Court explained:

> "Whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake."  United States v. Olano, 507 U.S. 725, 733 (1993).  For certain fundamental rights, the defendant must personally make an informed waiver.  See, e.g., Johnson v. Zerbst, 304 U.S. 458, 464-465 (1938) (right to counsel); Brookhart v. Janis, 384 U.S. 1, 7-8 (1966) (right to plead not guilty).  For other rights, however, waiver may be effected by action of counsel.  "Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has -- and must have -- full authority to manage the conduct of the trial."  Taylor v. Illinois, 484 U.S. 400, 417-418 (1988).  As to many decisions pertaining to the conduct of the trial, the defendant is "deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'"  Link v. Wabash R. Co., 370 U.S. 626, 634 (1962) (quoting Smith v. Ayer, 101 U.S. 320, 326 (1880)).  Thus, decisions by counsel are generally given effect as to what arguments to pursue, see Jones v. Barnes, 463 U.S. 745, 751 (1983), what evidentiary objections to raise, see Henry v. Mississippi, 379 U.S. 443, 451 (1965), and what agreements to conclude regarding the admission of evidence, see United States v. McGill, 11 F.3d 223, 226-227 (CA1 1993).  Absent

29

a demonstration of ineffectiveness, counsel's
word on such matters is the last.

Id. at 114-15.

The provisions of Code §§ 19.2-187 and 19.2-187.1 adequately inform a criminal defendant of the consequences of the failure to exercise the right to have a forensic analyst present at trial for cross-examination.  Pursuant to Code § 19.2-187, a "duly attested" certificate of analysis that has been timely filed with the appropriate clerk of court is "admissible in evidence as evidence of the facts therein stated and the results of the analysis or examination referred to therein."  The provisions of Code § 19.2-187.1 then inform a criminal defendant about what steps to take in order to secure the physical presence of the forensic analyst and subject that person to an oath, cross-examination, and a credibility determination by the trier of fact - the elements of confrontation.  Once the forensic analyst appears at trial for cross-examination, any Confrontation Clause problem disappears.  See Crawford, 541 U.S. at 59 n.9 ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.").

Based on the provisions of Code §§ 19.2-187 and 19.2-187.1, no criminal defendant can seriously contend that he is not on notice that a certificate of analysis will be admitted into evidence without testimony from the person who performed the analysis unless he utilizes the procedure provided in Code § 19.2-187.1.  Failure to use the statutory procedure obviously waives the opportunity to confront the forensic analyst.  Additionally, "everyone is conclusively presumed to know the law – that is, he is estopped from denying such knowledge."  King v. Empire Collieries Co., 148 Va. 585, 590, 139 S.E. 478, 479 (1927).  Thus, we reject not only the defendants' contention that the statutes need to contain an explicit notice outlining the consequences of failing to utilize the procedure set forth in Code § 19.2-187.1, but also the assertion that their waiver of confrontation rights was not voluntary, intelligent, and knowing.  Confrontation Clause rights are waived every day in this Commonwealth when a criminal defendant's attorney chooses not to object to the admission of hearsay evidence or stipulates to the admission of evidence.  See, e.g., People v. Campbell, 802 N.E.2d 1205, 1213 (Ill. 2003) (holding that "defense counsel may waive a defendant's right of confrontation as long as the defendant does not object and the decision to stipulate is a matter

31

of trial tactics and strategy"); Waldon v. State, 749 So.2d

262, 265-66 (Miss. Ct. App. 1999) (same); Carr v. State,

829 S.W.2d 101, 102-03 (Mo. Ct. App. 1992) (same); State v.

Bromwich, 331 N.W.2d 537, 540 (Neb. 1983) (same).  We have

never required, nor should we, that the record

affirmatively reflect a defendant's knowing, voluntary, and

intelligent agreement to such waivers.  See Bilokur, 221

Va. at 474, 270 S.E.2d at 752.

Thus, we hold that the procedure in Code § 19.2-187.1

adequately safeguards a criminal defendant's rights under

the Confrontation Clause and that the defendants' failure

in these cases to utilize that procedure waived their right

to be confronted with the forensic analysts, i.e., to enjoy

the elements of confrontation.[5]  Other courts have reached

---

[5] In light of our holding, Cypress' argument that there
was insufficient evidence to sustain his conviction because
the only evidence proving he possessed cocaine was the
"inadmissible" certificate of analysis is without merit.

We are also not persuaded by the defendants' argument
that, if the procedure in Code § 19.2-187.1 adequately
protects a criminal defendant's confrontation rights, the
Commonwealth could present all its evidence by affidavit
and require a defendant to subpoena the witnesses in order
to cross-examine them.  We are not willing to engage in the
sort of speculation urged by the defendants.  Furthermore,
the provisions of Code § 19.2-187 obviate the need for the
Commonwealth to call one of the limited number of forensic
analysts to testify in every case in which a certificate of
analysis is being offered into evidence if the defendant
chooses not to exercise his confrontation rights by
utilizing the procedure provided in Code § 19.2-187.1.

similar conclusions. For example, in Hinojos-Mendoza, the court addressed a Colorado statute that makes " '[a]ny report . . . of the criminalistics laboratory' " admissible into evidence " 'in the same manner and with the same force and effect as if the employee or technician . . . had testified in person.' " 169 P.3d at 665 (quoting Colo. Rev. Stat. § 16-3-309(5)). The court noted that pursuant to the statute, " '[a]ny party may request that such employee or technician testify in person at a criminal trial on behalf of the state . . . by notifying the witness and other party at least ten days before the date of such criminal trial.' " Id. (quoting Colo. Rev. Stat. § 16-3-309(5)). Failure to make a timely request was held to amount to a waiver of the right to confront the technician. Id. at 668. In concluding that the statute does not run afoul of the Confrontation Clause, the court explained that the statutory procedure "for ensuring the presence of the lab technician at trial does not deny a defendant the opportunity to cross-examine the technician, but simply requires that the defendant decide prior to trial whether he will conduct a cross-examination. The statute provides the opportunity for confrontation – only the timing of the defendant's decision is changed." Id.

The court further noted that when "a defendant chooses not to take advantage of the opportunity to cross-examine a witness, the defendant has not been denied his constitutional right to confrontation." Id. Thus, the court held that, "where a defendant . . . is represented by counsel, the failure to comply with the statutory prerequisites . . . waives the defendant's right to confront the witness just as the decision to forgo cross-examination at trial would waive that right." Id. at 670; see also Brown, 939 So.2d at 961 (failure to make a timely objection in accordance with statutory requirements to the admissibility of a certificate of analysis waived the issue for appeal); Cunningham, 903 So.2d at 1121 (finding that the defendant's failure to follow statutory procedure and subpoena the person who performed the analysis waived his right of confrontation and explaining that, "[f]rom a practical standpoint, these statutes are no different from a situation in which the State offers hearsay evidence at trial [in that if the] defendant does not contemporaneously object, the hearsay is allowed into evidence"); City of Las Vegas v. Walsh, 124 P.3d 203, 209 (Nev. 2005) (holding that statutory scheme adequately preserved the right of the accused under the Confrontation Clause and that "[f]ailure to exercise confrontation rights [under the statute] will

act as a waiver of those rights with regard to the affidavits"); State v. Campbell, 719 N.W.2d 374, 378 (N.D. 2006) (criminal defendant's failure to subpoena forensic scientist as provided by statute and to avail himself of opportunity to cross-examine the witness waived any Sixth Amendment violation); Deener v. State, 214 S.W.3d 522, 528 (Tex. App. 2006) ("Because [defendant] did not file a written objection to the use of the affidavits and certificate of analysis at least ten days before trial, his objection at trial was not timely and he forfeited his right of confrontation.").

We recognize that some courts have reached contrary conclusions, but we are not persuaded by their rationales. See e.g., Thomas v. United States, 914 A.2d 1, 20 (D.C. Cir. 2006) (holding that confrontation rights may be waived if record shows constitutionally valid waiver); People v. McClanahan, 729 N.E.2d 470, 478 (Ill. 2000) ("[S]tatute impermissibly requires a defendant to take a procedural step to secure his confrontation rights or be deemed to have waived them, and does not require that the waiver of this fundamental constitutional right be a knowing, intelligent, and voluntary act."); State v. Laturner, 163 P.3d 367, 377 (Kan. Ct. App. 2007) (The statute in question violated a defendant's confrontation rights because "the

defendant is deemed to have waived the Sixth Amendment confrontation right if the defendant fails to take affirmative steps to assert it."); State v. Caulfield, 722 N.W.2d 304, 313 (Minn. 2006) ("At a minimum, any statute purporting to admit testimonial reports without the testimony of the preparer must provide adequate notice to the defendant of the contents of the report and the likely consequences of his failure to request the testimony of the preparer" in order for the defendant to make a knowing, intelligent, and voluntary waiver of his confrontation rights.).

Therefore, we hold that the Court of Appeals did not err in affirming the judgments of the circuit courts admitting into evidence the respective certificates of analysis at issue in these appeals.  We turn now to the unrelated issue raised by Briscoe.

B.  Sufficiency of Evidence to Prove Corpus Delicti

In his remaining assignment of error, Briscoe asserts that "[t]he Court of Appeals erred in upholding the trial court's finding the evidence was sufficient to prove the corpus delicti of the offense of transporting cocaine into the Commonwealth."  He argues that his uncorroborated confession was not sufficient to prove an essential element

36

of this crime, specifically that he brought cocaine into the Commonwealth in violation of Code § 18.2-248.01.[6]

In any criminal prosecution, the Commonwealth must prove the corpus delicti, "that is, the fact that the crime charged has been actually perpetrated." Cherrix v. Commonwealth, 257 Va. 292, 305, 513 S.E.2d 642, 651 (1999). However, when an accused has fully confessed to commission of the crime, "only slight corroboration of the confession is required to establish corpus delicti beyond a reasonable doubt." Id. (emphasis added); accord Clozza v. Commonwealth, 228 Va. 124, 133, 321 S.E.2d 273, 279 (1984); Campbell v. Commonwealth, 194 Va. 825, 833, 75 S.E.2d 468, 473 (1953). While an accused cannot be convicted based solely on his or her confession, "[i]t is not necessary, however, that there be independent corroboration of all the contents of the confession, or even of all the elements of the crime. The requirement of corroboration is limited to the facts constituting the corpus delicti." Watkins v. Commonwealth, 238 Va. 341, 348, 385 S.E.2d 50, 54 (1989). In addition, "corroborative facts supporting the corpus

---

[6] In relevant part, the provisions of Code § 18.2-248.01 make it "unlawful for any person to transport into the Commonwealth by any means with the intent to sell or distribute one ounce or more of cocaine, coca leaves or any salt, compound, derivative or preparation thereof."

37

delicti may be furnished by circumstantial evidence as readily as by direct evidence." Id. at 349, 385 S.E.2d at 54 (citing Epperly v. Commonwealth, 224 Va. 214, 229, 294 S.E.2d 882, 891 (1982)).

Following his arrest and being advised of his Miranda rights, Briscoe told police that everything taken from his apartment during the search, including the cocaine, the crack, and the plastic bags, belonged to him. He stated that the cocaine found in the kitchen sink should have been about 40 grams and that he got it from "[his] man in [Washington,] D.C. two weeks ago" and brought it back to Alexandria. Briscoe confessed that his most recent purchase consisted of approximately 62 grams of cocaine and that the cocaine was hard, not powder, when he bought it. When asked where he obtained cocaine, Briscoe named "three main guys" in Washington, D.C. as his sources. He also named five dealers to whom he sells the cocaine and explained the frequency of those sales and the profit he makes from the cocaine he buys. All of these statements were admitted into evidence during Briscoe's trial.

We agree with the Court of Appeals' holding that "[Briscoe's] confession that he brought the [cocaine] from D.C. to Alexandria, along with the evidence seized from his person and his apartment, sufficiently established the

corpus delicti of the transportation offense." Briscoe v. Commonwealth, Record No. 1478-06-4, slip op. at 4 (January 18, 2007). The "solid material" cocaine seized from Briscoe's apartment was consistent with the type of cocaine he admittedly purchased two weeks before the search and the remaining 36.578 grams was consistent with the amount he purchased and the frequency of his sales during a two-week period. The presence of the cocaine, scales, weights, and plastic bags inside Briscoe's apartment provided more than the slight evidence necessary to corroborate Briscoe's confession and establish the corpus delicti beyond a reasonable doubt. See Cherrix, 257 Va. at 305, 385 S.E.2d at 651.

Contrary to Briscoe's argument, the Court's decision in Phillips v. Commonwealth, 202 Va. 207, 116 S.E.2d 282 (1960), is distinguishable. There, the defendant confessed to the crime of sodomy. Id. at 209, 116 S.E.2d at 283. We held that, while the victim's possession of the defendant's vehicle corroborated the defendant's statement that he and the victim were in each other's presence at a particular time, "it furnishe[d] no corroboration that the actual crime of sodomy for which [the defendant] was convicted was committed." Id. at 211, 116 S.E.2d at 285. The victim's possession of the vehicle neither established the

commission of the crime nor corroborated the defendant's confession that he committed the crime of sodomy.  Id. at 212, 116 S.E.2d at 285.  As we have already explained, the items seized during the search of Briscoe's apartment provided the necessary corroboration to establish the corpus delicti.

III. CONCLUSION

For these reasons, we will affirm the judgment of the Court of Appeals in each of these appeals.

Record No. 070762 – Affirmed.
Record No. 070815 – Affirmed.
Record No. 070817 – Affirmed.

JUSTICE KEENAN, with whom CHIEF JUSTICE HASSELL and JUSTICE KOONTZ join, dissenting.

Today the majority holds that a defendant's failure to exercise a statutory right under Code § 19.2-187.1 results in the forfeiture of his Sixth Amendment right "to be confronted with the witnesses against him."  In my view, this analysis confuses the waiver of a statutory right with the waiver of a constitutional right.  Because the certificates of analysis at issue were "testimonial" hearsay, within the meaning of Davis v. Washington, 547 U.S. 813 (2006), and Crawford v. Washington, 541 U.S. 36 (2004), their admission into evidence under Code § 19.2-187 in the prosecution's cases in the absence of supporting

testimony from certificates' authors, violated the defendants' Confrontation Clause rights.  Thus, I disagree with the majority's holding that Code § 19.2-187.1 preserves a defendant's Confrontation Clause rights, or that a defendant's failure to exercise rights accorded under that statute results in the surrender of Confrontation Clause rights.

### I.  "TESTIMONIAL" CHARACTER OF EVIDENCE

I would hold that the certificates of analysis are "testimonial" hearsay based on the Supreme Court's analysis of that term in Davis and Crawford.  In particular, the analysis in Davis instructs us to examine the purpose for which a non-testifying witness initially made the statements that were later introduced in evidence at a criminal trial, and to inquire whether the person making the hearsay statements was "testifying" and "acting as a witness."  See Davis, 547 U.S. at ___, 126 S.Ct. at 2277.

In Crawford, the Supreme Court held that the Sixth Amendment forbids the admission in a criminal trial of "testimonial" hearsay statements made against an accused by a witness who does not testify at the trial, unless the witness is unavailable or the defendant had a prior opportunity to cross examine that witness.  541 U.S. at 68. At the defendant's criminal trial in Crawford, the trial

court admitted in evidence a tape-recorded statement that the defendant's wife made to police officers during a police investigation of the crime for which the defendant was charged. Id. at 38-39, 68-69. The Supreme Court held that the defendant's confrontation rights were violated by admission of his wife's tape-recorded statement because the statement was "testimonial" in nature and the wife did not testify at trial. Id. Although the Supreme Court in Crawford declined to provide a comprehensive definition of the term "testimonial," the Court indicated that some statements would always be categorized as "testimonial," including ex parte testimony given at a preliminary hearing and statements taken by police officers during the course of a police interrogation. Id. at 52, 68.

In Davis, the Supreme Court revisited the definition of "testimonial" hearsay. The Court held that:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. at ___, 126 S.Ct. at 2273-74.

42

In *Davis*, the Court considered two separate situations in which the statements of a witness, who did not testify at trial, were admitted in evidence concerning a defendant's illegal conduct. *Id.*, 547 U.S. at ___, 126 S.Ct. at 2271-73. In the first situation, the Court held that statements made to law enforcement personnel during a "911" emergency telephone call were not "testimonial" in nature because the purpose of the statements was to elicit assistance during an ongoing emergency. *Id.* at ___, 126 S.Ct. at 2277. The Court reasoned that the speaker was not "acting as a witness" or "testifying" because, unlike a witness, she was describing events "as they were actually happening, rather than describ[ing] past events." *Id.* at ___, 126 S.Ct. at 2276-77 (emphasis and internal quotation marks omitted).

The second situation in *Davis* concerned statements recorded in an affidavit obtained by police following a domestic dispute. *Id.*, 547 U.S. ___, 126 S.Ct. at 2272-73. The Court concluded that these statements were "testimonial" in character because the declarant's purpose in making the statements was not to describe an ongoing emergency situation, but to supply information in a police investigation about past criminal conduct. *Davis*, 547 U.S. at ___, 126 S.Ct. at 2278. The Court concluded that the

43

statements were "inherently testimonial" because they were "an obvious substitute for live testimony," and they did "precisely what a witness does on direct examination." Id. (emphasis omitted).

Based on the holdings in Davis and Crawford, I would conclude that a certificate of drug analysis, in function, "acts as a witness" against an accused. See Davis, 547 U.S. at ___, 126 S.Ct. at 2277; Crawford, 541 U.S. at 51. Much like any other expert witness, the scientist preparing a certificate of analysis does so based on a factual foundation supplied from past events. See Santen v. Tuthill, 265 Va. 492, 498, 578 S.E.2d 788, 792 (2003); Countryside Corp. v. Taylor, 263 Va. 549, 553, 561 S.E.2d 680, 682 (2002). Thus, the certificate admitted under Code § 19.2-187.1 functions in the same manner as expert witness testimony because the certificate describes the scientist's procedures and conclusions concerning the material submitted for analysis. See Thomas v. United States, 914 A.2d 1, 12-13 (D.C. App. 2006).

The holding in Davis further reinforces the "testimonial" nature of a certificate of analysis, because the certificate is created "to establish or prove past events potentially relevant to later criminal prosecution." See Davis, 547 U.S. at ___, 126 S.Ct. at 2274; Thomas, 914

44

A.2d at 12-13; Belvin v. State, 922 So.2d 1046, 1050-51 (Fla. Dist. Ct. App. 2006). A forensic scientist prepares the certificates in these cases for the purpose of proving a critical element of a criminal offense, namely, that the chemical sample submitted for analysis is an illegal substance. See Davis, 547 U.S. at ___, 126 S.Ct. at 2274-76; Crawford, 451 U.S. at 51; Commonwealth v. Allen, 269 Va. 262, 274, 609 S.E.2d 4, 12 (2005); Santen, 265 Va. at 498, 578 S.E.2d at 792; Countryside Corp., 263 Va. at 553, 561 S.E.2d at 682; Thomas, 914 A.2d at 12-13; Belvin, 922 So.2d 1046, 1050-51; State v. Laturner, 163 P.3d 367, 376-77 (Kan. Ct. App. 2007); State v. March, 216 S.W.3d 663, 666 (Mo. 2007); State v. Miller, 144 P.3d 1052, 1058 (Or. Ct. App. 2006). In the parlance of Davis, the certificates of analysis in the present cases functioned as "an obvious substitute for live testimony," because the Commonwealth introduced them in lieu of the scientists' testimony, and otherwise would have been required to establish the illegal nature of the substances by presenting actual testimony from the scientists themselves. See Davis, 547 U.S. at ___, 126 S.Ct. at 2278; Thomas, 914 A.2d at 12-13; State v. Caulfield, 722 N.W.2d 304, 309 (Minn. 2006); March, 216 S.E.3d at 666; State v. Berezansky, 899 A.2d 306, 312 (N.J. Super. Ct. App. Div. 2006).

45

Applying additional rationale employed by the Supreme Court in Davis, I also observe that the forensic scientists' analyses were not performed under circumstances of an emergency or contemporaneously with the commission of the crimes, but were accomplished well after the criminal events had transpired.  See Davis, 547 U.S. at ___, 126 S.Ct. at 2276-77, 2278; Thomas, 914 A.2d at 12-13; Hinojos-Mendoza v. People, 169 P.3d 662, 667 (Colo. 2007); Caulfield, 722 N.W.2d at 309; March, 216 S.W.3d at 666; Berezansky, 899 A.2d at 312; City of Las Vegas v. Walsh, 124 P.3d 203, 208 (Nev. 2005); People v. Rogers, 780 N.Y.S.2d. 393, 397 (N.Y. App. Div. 2004); Miller, 144 P.3d at 1060.  In fact, the scientists prepared the certificates in response to police investigations.  See Davis, 547 U.S. at ___, 126 S.Ct. at 2276-79; Crawford, 541 U.S. at 52, 68; Thomas, 914 A.2d at 12-13; Hinojos-Mendoza, 169 P.3d at 667.

Moreover, the certificates fall into the category of "formalized testimonial materials, such as affidavits," which the Supreme Court in Crawford included in its examples of the types of statements that would be considered testimonial.  See Crawford, 541 U.S. at 51-52. The certificates contain a "solemn declaration or affirmation" by the forensic scientists who prepared them,

46

in conformance with the requirement of Code § 19.2-187 that such certificates be "duly attested" before being admitted in evidence.  See id., 541 U.S. at 51.

Based on the holdings in Davis and Crawford, I would conclude that the certificates of analysis admitted in evidence in the present cases served to "bear testimony" against the defendants and, therefore, were "testimonial" evidence within the meaning of those holdings.  I would further conclude that the defendants in these cases had a Sixth Amendment right to be confronted with the testimony of the forensic scientists who prepared the certificates, because the Commonwealth failed to demonstrate that the scientists were unavailable or that the defendants had a prior opportunity to cross-examine them.  See Crawford, 541 U.S. at 68.[*]

II.  VIOLATION OF CONFRONTATION CLAUSE RIGHTS

I would further hold that the defendants' Confrontation Clause rights were violated when the certificates of analysis were admitted in evidence under Code § 19.2-187.  The Confrontation Clause is worded in the passive, rather than in the active, voice.  See U.S. Const., amend. VI.  Thus, under that constitutional guarantee, an accused enjoys the right "to be confronted" by the prosecution with the witnesses against him.  Id.

47

As the majority correctly observes, the Sixth Amendment confrontation right has long been held to include a defendant's "opportunity for effective cross-examination."  See United States v. Owens, 484 U.S. 554, 559-60 (1988)(quoting Kentucky v. Stincer, 482 U.S. 730, 739 (1987)); Pointer v. Texas, 380 U.S. 400, 404 (1965); Mattox v. United States, 156 U.S. 237, 242-43 (1895).  This opportunity is "one of the safe-guards essential to a fair trial," and is "a right long deemed so essential for the due protection of life and liberty that it is guarded against legislative and judicial action by provisions in the Constitution."  Pointer, 380 U.S. at 404 (quoting Kirby v. United States, 174 U.S. 47, 55-56 (1899); and Alford v. United States, 282 U.S. 687, 692 (1931)).  The Confrontation Clause "ensure[s] that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo-American criminal proceedings."  State v. Craig, 497 U.S. 836, 846 (1990).

This Court consistently has recognized that in criminal trials, the Confrontation Clause preserves for a defendant the right to cross-examine prosecution witnesses. See Bilokur v. Commonwealth, 221 Va. 467, 470, 270 S.E.2d 747, 750 (1980); Moore v. Commonwealth, 202 Va. 667, 669,

119 S.E.2d 324, 327 (1961). The opportunity for effective cross-examination of prosecution witnesses, however, presupposes that a defendant has an opportunity to cross-examine those witnesses during the prosecution's case. Thus, preservation of the Sixth Amendment confrontation right requires that the prosecution call a defendant's accusers as witnesses to actively confront the defendant. See Owens, 484 U.S. at 557, 559; Kirby, 174 U.S. at 55-56; Thomas, 914 A.2d at 16; Lowery v. Collins, 988 F.2d 1364, 1369-70 (5th Cir. 1993); State v. Snowden, 867 A.2d 314, 332-33 & n.23 (Md. 2005).

Code § 19.2-187 forces a defendant to relinquish his right "to be confronted" in the prosecution's case in chief, because the statute permits a timely-filed certificate of analysis to be admitted automatically in the absence of testimony from the scientist who prepared the certificate. See id. That statute allows admission of the certificate irrespective whether a defendant chooses to call the forensic scientist to testify in his own case under the provisions of Code § 19.2-187.1. Thus, I would conclude that a Confrontation Clause violation occurred in the present cases because the defendants were not able to subject the contents of the certificates of analysis to

49

adversarial scrutiny before the prosecution concluded its cases in chief.

### III.  WAIVER INAPPLICABLE

The provisions of Code § 19.2-187.1 did not remedy this Confrontation Clause violation.  That section provides a criminal defendant the statutory right to call the forensic scientist who prepared a certificate of analysis as a witness in the defendant's own case.  See id.  Thus, Code § 19.2-187.1 merely provides a criminal defendant the opportunity to seek evidence in his favor by questioning the scientist who prepared the certificate that has already been admitted in evidence against him.

The majority asserts, however, that the present cases are analogous to other situations in which we have held that criminal defendants are required to take "certain procedural steps" in order to preserve their constitutional rights.  In my opinion, this argument misconstrues the very nature of Code § 19.2-187.1.  No "procedural step" under Code § 19.2-187.1 will preserve a defendant's Sixth Amendment confrontation right, because that section merely establishes a separate, statutory right for a defendant to call the forensic scientist as a witness in a defendant's own case.  Thus, Code § 19.2-187.1 does not impact a defendant's Sixth Amendment right "to be confronted" by the

50

witnesses against him, because the statute cannot revive a defendant's right to be confronted by the prosecution with the scientist's evidence.  See Belvin, 922 So.2d at 1054; State v. Birchfield, 157 P.3d 216, 220 (Or. 2007).

The majority seeks to avoid this dilemma by stating that the defendants failed to raise a due process challenge alleging that Code § 19.2-187.1 impermissibly shifted the burden of producing evidence to the defendants, which is a claim not cognizable under the Sixth Amendment.  This argument, however, is unavailing because the majority confuses the issue whether a defendant may be required to produce evidence in a criminal trial with the issue whether the statutory mechanism at issue in this case, which requires a defendant to produce evidence, is capable of preserving his Confrontation Clause rights.

A defendant's constitutional right to be confronted with the witnesses against him arises automatically, and the state may not require a defendant to take an affirmative action to preserve this right.  See Taylor v. Illinois, 484 U.S. 400, 410, & n.14 (1988); People v. McClanahan, 729 N.E.2d 470, 475 (Ill. 2000); Birchfield, 157 P.3d at 219-20.  While a defendant's failure to act under Code § 19.2-187.1 may constitute a waiver of his statutory right under that Code section to call the

forensic scientist in the defendant's case, the fact that he chooses not to exercise this statutory right is insufficient to establish a waiver of his separate constitutional confrontation right that is guaranteed to him throughout his criminal trial. See City of S. Boston v. Halifax County, 247 Va. 277, 282, 441 S.E.2d 11, 14 (1994); Thomas, 914 A.2d at 16; Collins, 988 F.2d at 1369-70; Snowden, 867 A.2d at 332-33.

A defendant cannot waive a right that he has already been denied. The extent of a defendant's waiver of a right under Code § 19.2-187.1 necessarily is limited to rights he possesses under the statute. See Barber v. Page, 390 U.S. 719, 725 (1968); Brookhart v. Janis, 384 U.S. 1, 4 (1966); Johnson v. Zerbst, 304 U.S. 458, 464 (1938). Thus, the defendants in these cases could not have waived under Code § 19.2-187.1 rights that had already been denied by operation of Code § 19.2-187.

Even if the majority were correct, however, that Code § 19.2-187.1 offers a defendant the protection of a confrontation right, the record does not support a conclusion that these defendants waived that right. A waiver of a constitutional right requires a clear showing that there was an "intentional relinquishment or abandonment of a known right or privilege." Barber, 390

52

U.S. at 725; Brookhart, 384 U.S. at 4; Zerbst, 304 U.S. at 464; Allen v. Commonwealth, 252 Va. 105, 111, 472 S.E.2d 277, 280 (1996). The record fails to establish a "knowing and intelligent" waiver under Code § 19.1-187.1 because that Code section does not provide a defendant with notice that if he fails to avail himself of the statute's provisions, he waives his Sixth Amendment right. See Brookhart, 284 U.S. at 4. This Court should not presume a defendant's waiver of his Confrontation Clause rights from a silent record. See Boykin, 395 U.S. at 242; Laturner, 163 P.3d at 377; cf. Barber, 390 U.S. at 725.

I would hold that a constitutional application of Code § 19.2-187 requires that if the prosecution wishes to introduce in evidence a certificate of analysis contemplated by Code § 19.2-187, the prosecution must obtain from a defendant a stipulation regarding the admissibility of the contents of that certificate, or an affirmative waiver by a defendant of his Confrontation Clause rights regarding the certificate. In the absence of such a stipulation or affirmative waiver, the Sixth Amendment requires that the prosecution call in its case in chief the forensic scientist who prepared the certificate to present this "testimonial" evidence. See Davis, 547 U.S. at ___, 126 S.Ct. at 2277; Crawford, 541 U.S. at 68;

<u>Boykin</u>, 395 U.S. at 243; <u>Laturner</u>, 163 P.3d at 377; <u>cf.</u>
<u>Barber</u>, 390 U.S. at 725. Because there were no such affirmative waivers or stipulations in the cases before us, and the forensic scientists did not testify regarding the contents of the certificates in the prosecution's cases in chief, I would hold that the certificates of analysis in these cases were admitted in violation of the defendants' Confrontation Clause rights. Therefore, I would reverse the defendants' convictions and remand the cases for new trials, if the Commonwealth be so advised.

---

\* In reaching this conclusion, I recognize that courts in various jurisdictions have reached differing results in deciding the question whether certificates of scientific analysis are "testimonial" in character, within the meaning of <u>Davis</u> and <u>Crawford</u>. <u>Compare</u>, <u>Thomas v. United States</u>, 914 A.2d 1, 12-13 (D.C. App. 2006) (holding that chemist's report was testimonial because it was akin to expert report and primary purpose was to substitute for chemist's testimony in prosecution of accused); <u>Hinojos-Mendoza v. People</u>, 169 P.3d 662, 665-66 (Colo. 2007) (holding that laboratory report was testimonial because it was prepared at direction of police, solely for purposes of prosecution, and introduced in evidence to establish element of offense); <u>Martin v. State</u>, 936 So.2d 1190, 1192 (Fla. Dist. Ct. App. 2006) (holding that drug certificate was testimonial because it was created for criminal prosecution); <u>Belvin v. State</u>, 922 So.2d 1046, 1050 (Fla. Dist. Ct. App. 2006) (deciding that breath test affidavits were testimonial because they were generated by law enforcement for later use at criminal trial); <u>State v. Laturner</u>, 163 P.3d 367, 376-77 (Kan. Ct. App. 2007) (holding that laboratory report was testimonial because scientist was witness, statements in report were testimony, and scientist knew statements would be used in later trial against accused); <u>People v. Lonsby</u>, 707 N.W.2d 610, 619-21 (Mi. 2005) (concluding that crime lab report was

testimonial because person preparing report would reasonably expect it to be used in prosecution); State v. Caulfield, 722 N.W.2d 304, 309 (Minn. 2006) (deciding that laboratory report was testimonial because analyst attested to findings, report was equivalent of testimony, and report was prepared at police request for purpose of prosecution); State v. March, 216 S.W.3d 663, 666 (Mo. 2007) (holding that laboratory report was testimonial because it was prepared at request of law enforcement, created for purposes of prosecution, intended to prove element of offense, and offered in lieu of testimony); State v. Berezansky, 899 A.2d 306, 312 (N.J. Super. Ct. App. Div. 2006) (concluding that blood test analysis was testimonial because it was prepared to prove element of offense in lieu of calling technician to testify); City of Las Vegas v. Walsh, 124 P.3d 203, 208 (Nev. 2005) (holding that nurse's affidavit stating name, time, and manner of blood withdrawal was testimonial because it was made for later use at trial); People v. Rogers, 780 N.Y.S.2d. 393, 396-97 (N.Y. App. Div. 2004) (holding that blood test report was testimonial because it was initiated by prosecution to discover evidence against the accused); State v. Crager, 844 N.E.2d 390, 396 (Ohio App. 2005) (holding that DNA analysis was testimonial because it was prepared as part of police investigation and reasonable people would conclude that report would later be used at trial); State v. Miller, 144 P.3d 1052, 1058 (Or. Ct. App. 2006) (concluding that laboratory report was testimonial because it contained solemn declarations produced in response to police inquiry for purpose of establishing critical element at later criminal prosecution); Deener v. State, 214 S.W.3d 522, 526 (Tex. Ct. App. 2006) (deciding that certificates of analysis were core testimonial evidence); with, United States v. Washington, 498 F.3d 225, 230-32 (4th Cir. 2007) (holding that report of data analyzing blood sample was not testimonial statement of lab technician because statement was generated by machine); United States v. Ellis, 460 F.3d 920, 926-27 (7th Cir. 2006) (holding that certificates of blood and urine analysis were non-testimonial even though person creating records knew records may be used for criminal prosecution, because records were created in ordinary course of business and technicians were not testifying and were not acting as witnesses); Pruitt v. State, 954 So.2d 611, 617 (Ala. Crim. App. 2006) (concluding that certificate of analysis was non-testimonial because it was created by inherently

trustworthy and reliable scientific testing rather than opinionated assertions, speculation, or guesswork); Bohsancurt v. Eisenberg, 129 P.3d 471, 475-78 (Ariz. App. 2006) (holding that record of regular testing of breathalyzer equipment was non-testimonial business record because it was kept in ordinary course of business and not for purposes of litigation); People v. Geier, 161 P.3d 104, 140 (Ca. 2007) (concluding that DNA report was not testimonial because observations in report were contemporaneous recordations rather than documentation of past events); People v. Johnson, 18 Cal. Rptr. 3d 230, 233 (Cal. Ct. App. 2004) (deciding that laboratory report was not testimonial because it did not function as equivalent of in-court testimony); State v. Musser, 721 N.W.2d 734, 753-54 (Iowa 2006) (stating that HIV test performed two years prior to trial and not for purposes of prosecution was non-testimonial); Commonwealth v. Verde, 827 N.E.2d 701, 705 (Mass. 2005) (holding that laboratory report was merely report of scientific data and therefore was non-testimonial business record); Rollins v. State, 897 A.2d 821, 837-46 (Md. 2006) (concluding that factual, routine, and non-analytical findings in autopsy report were non-testimonial); State v. Forte, 629 S.E.2d 137, 144 (N.C. 2006) (holding that blood sample analysis was not testimonial because it did not "bear witness" against accused and was not prepared exclusively for trial); State v. Dedman, 102 P.3d 628, 635-36 (N.M. 2004) (concluding that blood alcohol report was not testimonial because not prepared for purpose of prosecution); Commonwealth v. Carter, 932 A.2d 1261, 1268 (Pa. 2007) (holding that blood alcohol tests were not testimonial because they were basic, routine, and contained precise calculations).